UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROL A. ROLLIN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>TRANSAMERICA LIFE INSURANCE COMPANY,<br><br>　　　　　Defendant. | No. 1:25-cv-00194-KES-HBK<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND<br><br>Doc. 24 |

Plaintiff Carol A. Rollin brings this claim against defendant Transamerica Life Insurance Company ("Transamerica") alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and financial elder abuse in violation of the Elder Abuse and Dependent Adult Civil Protection Act, California Welfare and Institutions Code, section 15600 *et seq.* Doc. 21. Transamerica moves to dismiss for failure to state a claim. Doc. 24. The parties' briefs have been considered and, for the reasons set forth below, Transamerica's motion to dismiss is granted and Rollin's first amended complaint is dismissed with leave to amend.

**I.     Procedural History**

Rollin initiated this action by filing a complaint on February 13, 2025. Doc. 1. On April 3, 2025, Transamerica moved to dismiss the complaint for failure to state a claim. Doc. 13. In lieu of opposing the motion, Rollin filed a first amended complaint. Doc. 21 ("FAC").

1

1    On May 1, 2025, Transamerica again moved to dismiss for failure to state a claim, arguing that the first amended complaint does not set forth sufficient facts that, if true, would state a claim upon which relief could be granted.[1]  Doc. 24.  In support of its motion, Transamerica filed a declaration and request for judicial notice of the long-term care insurance policy at issue for Rollin's claims.  Docs. 25, 26.  On May 15, 2025, Rollin filed an opposition to the motion to dismiss.[2]  Doc. 27.  On May 22, 2025, the Court granted Transamerica's ex parte application for an extension of time to file a reply in support of its motion, Doc. 30, and on June 2, 2025, Transamerica filed its reply, Doc. 32.

**II.    Facts**[3]

In her first amended complaint, Rollin alleges Transamerica issued to her a long-term care policy and that she paid all premiums due under the policy.[4]  FAC ¶¶ 6–7.  The policy lists "[t]he

---

[1] Transamerica brings its motion under Rule 12(b)(6) as to all claims and separately also moves to dismiss Rollin's third cause of action, for financial elder abuse, under Rule 9(b).  Doc. 24 at 15.  As this Order resolves the motion to dismiss on Rule 12(b)(6) grounds, the Court need not address Transamerica's contention that Rule 9(b) applies and that Rollin failed to meet its requirements.

[2] Rollin does not oppose Transamerica's request for judicial notice nor dispute the authenticity of the attached policy.  *See* Doc. 27.  The request for judicial notice, Doc. 26, is therefore granted.  Moreover, the insurance policy is rightfully considered in connection with Transamerica's motion to dismiss because it is incorporated by reference into the first amended complaint.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir.2005) ("[T]he incorporation by reference doctrine [applies] to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint.").  *See Engers v. Allstate Ins. Co.*, 682 F. Supp. 2d 1094, 1097 (E.D. Cal. 2009) (considering defendant's request for judicial notice of long-term care policy in similar case and finding policy incorporated by reference into complaint).

[3] The Court presumes the factual allegations in the first amended complaint to be true for purposes of evaluating the motion to dismiss.  *See Murguia v. Langdon*, 61 F.4th 1096, 1106 (9th Cir. 2023).  As noted, the terms of the insurance policy at issue are also properly considered, and are therefore recited herein, given that the policy is incorporated by reference into the first amended complaint.

[4] In its motion to dismiss, Transamerica clarifies that the policy was issued by Transamerica's predecessor.  *See* Doc. 24 at 4; *see also* Doc. 25-1 at 46 (merger endorsement).

2

benefits . . . [Rollin] elected" to be included in her coverage, including nursing facility benefits; residential care facility benefits; home health care, adult day care, homemaker services and personal care benefits; hospice care benefits; and an alternative payment benefit, among others. Doc. 25-1 at 5–6. The policy provides in relevant part:

BENEFIT ELEGIBILITY

> To be eligible for benefits provided under this Policy, [Transamerica] must receive a Plan of Care that specifies what care is needed, unless a benefit specifically states that a Plan of Care is not required. The care must be needed because the Insured Person has been certified within the last 12 months by a Licensed Health Care Practitioner as:
>
> > (1) requiring continual supervision, which may include cueing by verbal prompting, gestures, or other demonstrations, by another person to protect the Insured Person from threats to his or her health or safety, due to Cognitive Impairment; or
> >
> > (2) requiring the presence of another person within arm's reach due to the inability to perform at least 2 of the 6 Activities of Daily Living, for a period that is expected to last at least 90 days. The other person must be present within arm's reach in order to assist, supervise or prevent injury by physical intervention.[5]

Doc. 25-1 at 23. The policy lists general exclusions and limitations, including that it "will not pay benefits when an Insured Person is eligible for confinement, treatment, services or care . . . rendered by a member of an Insured Person's Immediate Family" or benefits "that are not included in an Insured Person's Plan of Care, unless a benefit specifically states that a Plan of Care is not required."[6] *Id.* at 15.

The Policy further provides that the "Alternative Payment Benefit," one of the benefits included in the policy, will be paid "[o]nce an Insured Person has been certified to meet the requirements found in the Benefit Eligibility provision for Cognitive Impairment or the inability to perform at least 2 of the 6 Activities of Daily Living and [Transamerica] ha[s] received a Plan of Care." *Id.* at 35. It provides that the Alternative Payment Benefit will be paid "in lieu of all other benefits for care or services provided under this Policy." *Id.* "The exclusions regarding a

---

[5] "Plan of Care," "Insured Person," "Licensed Health Care Practitioner," "Cognitive Impairment," and "Activities of Daily Living" are defined terms in the policy. Doc. 25-1 at 16, 21–22.

[6] "Immediate Family" is also a defined term in the policy. Doc. 25-1 at 16.

member of an Insured Person's Immediate Family . . . will not apply to the Alternative Payment Benefit provision." *Id.* at 15.

Rollin alleges that she "became eligible to receive benefits under the terms of her policy" and that she "has initiated and submitted all necessary documentation" to Transamerica "such that her claim should have been approved and paid." FAC ¶ 8. She claims that, despite this, Transamerica denied the payment of benefits on July 22, 2024. FAC ¶ 8. She appealed, but Transamerica did not respond to the appeal. FAC ¶ 8. She further alleges that Transamerica denied the claim "on specious grounds, predicating its denial on the fact that she has family members who are able to provide the care which would otherwise be covered and paid for under the terms of her policy." FAC ¶ 9. Rollin asserts that she "is entitled to benefits under the Alternative Payment Benefit provision [of the Policy] for which the exclusion regarding a member of an Insured Person's Immediate Family does not apply." FAC ¶ 9. She states that she "has performed all obligations under the Policy on her part to be performed," that "[a]s a direct and proximate result of [Transamerica's] improper conduct, [she] has been deprived of the right to obtain benefits under the terms of the Policy," and that "[t]he denial of benefits constitutes a breach of the insurance contract" between the parties. FAC ¶ 10.

She further alleges that Transamerica "breached its respective duty of good faith and fair dealing" owed to her by "[u]nreasonably withholding coverage from [her] in bad faith at a time when [Transamerica] knew [she] was entitled to said coverage under the Policy;" "[u]nreasonably and in bad faith failing to provide a prompt and reasonable explanation of the basis relied on under the terms of the Policy, in relation to the applicable facts and policy provisions, for the failure to pay valid claims under the terms" of Rollin's coverage; "[i]ntentionally and unreasonably applying pertinent policy provisions to limit [Transamerica's] financial exposure and contractual obligations and to maximize profits;" and "[u]nreasonably compelling [Rollin] to institute litigation to recover her coverage due under the Policy to further discourage [her] from pursing her full policy benefits." FAC ¶ 12. Rollin claims that Transamerica's "conduct . . . was intended by [Transamerica] to cause injury to [Rollin], was despicable conduct carried on by [Transamerica] with a willful and conscious disregard of the rights of [Rollin], subjected [Rollin]

to cruel and unjust hardship in conscious disregard of her rights, and was an intentional misrepresentation, deceit, or concealment of a material fact known to [Transamerica] with the intention to deprive [Rollin] of property and/or legal rights or to otherwise cause injury, such as to constitute malice, oppression, or fraud." FAC ¶ 17.

Finally, Rollin alleges that she is an "elder" as defined by the Elder Abuse and Dependent Adult Civil Protection Act, because she was born on February 5, 1941, and is currently 84 years old. FAC ¶ 20. She claims that Transamerica's "conduct constituted [f]inancial abuse as defined by the Act." FAC ¶ 21. Specifically, she alleges that "[g]iven the nature of the insurance policy and the insurance coverage at issue herein, [Transamerica] knew, or should have known that the failure to pay benefits owed to [her] was a harmful breach of duty, and [Transamerica] should have been aware of the harm caused to [her] by all of its actions and most importantly by its failure and refusal to pay her long term care benefits when due under the terms of her coverage." FAC ¶ 22.

**III.    Legal Standard**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must contain facts that "nudge [the plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In determining whether a complaint states a claim on which relief may be granted, the Court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, the Court need not assume the truth of legal conclusions cast in the form of factual allegations.

5

*Iqbal*, 556 U.S. at 680.  While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678.  A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## IV.   Analysis

To state a claim for breach of contract, Rollin must allege "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal.4th 811, 821 (2011).  Transamerica does not dispute that Rollin has adequately alleged the existence of the contract between the parties—that is, the long-term care policy.  Rather, Transamerica contends that Rollin has failed to adequately allege both Transamerica's breach and the resulting damages. Doc. 24 at 9.  Transamerica also argues that Rollin failed to adequately allege her performance, or excuse for nonperformance, under the contract.  Doc. 24 at 9–10.

Regarding Rollin's performance under the contract and any potential breach of the policy by Transamerica, Rollin's central allegations include only that she "became eligible to receive benefits under the terms of her policy," that she "has initiated and submitted all necessary documentation to [Transamerica] such that her claim should have been approved and paid," that she "is entitled to benefits under the Alternative Payment Benefit provision [of the policy] for which the exclusion regarding a member of an Insured Person's Immediate Family does not apply."  FAC ¶¶ 8–9.  She alleges that Transamerica wrongfully "denied the payment of benefits" because "she has family members who are able to provide the care which would otherwise be covered and paid for under the terms of her policy."  FAC ¶ 9.

To be eligible to recover under the policy, including under the general terms regarding

benefit eligibility and under the terms governing the Alternative Payment Benefit, Rollin must "ha[ve] been certified within the last 12 months by a Licensed Health Care Practitioner" as "requiring continual supervision . . . by another person to protect [her] from threats to [her] health or safety, due to Cognitive Impairment" or "requiring the presence of another person within arm's reach due to the inability to perform at least 2 of the 6 Activities of Daily Living." Doc. 25-1 at 23, 35. Rollin must also have provided Transamerica with a Plan of Care that specifies what care is needed. Doc. 25-1 at 23, 35. The Plan of Care must be written; be based on the insured's comprehensive assessment; be required because the person is either Cognitively Impaired or unable to perform two of the six Activities of Daily Living, as those terms are defined by the policy; and have been "prescribed, approved, and signed by a Licensed Health Care Practitioner." Doc. 25-1 at 21.

Rollin does not allege that she was certified as either requiring continual supervision due to a Cognitive Impairment or having an inability to perform two or more of the six Activities of Daily Living such that she required the presence of another person within arm's reach. *See generally* FAC. Rollin's allegations that she "became eligible" and that she "has initiated and submitted all necessary documentation" do not demonstrate a plausible claim for relief for breach of contract under *Twombly* and *Iqbal*. *See Brown v. Hancock Life Ins. Co.*, Case No. EDCV-15-01249-MWF (AGRx), 2015 WL 12781205, at *3 (C.D. Cal. Oct. 6, 2015) (dismissing same claims—breach of contract, breach of the duty of good faith and fair dealing, and financial elder abuse—in similar case with leave to amend for failure to state a claim); *see also Potovsky v. Lincoln Benefit Life* (*Potovsky II*), Case No. 23-cv-02235-WHO, 2023 WL 8461171, at *5 (N.D. Cal. Dec. 6, 2023) (noting that the court had previously found allegations that plaintiff was "chronically ill" and had "provided [all] information" to insurer insufficient to state a claim).

In *Brown*, like here, the plaintiff was denied benefits under her long-term care policy. *Brown*, 2015 WL 12781205, at *1. Also, like here, under the plaintiff's policy, benefits were "due on proof of the insured's inability to perform at least two Activities of Daily Living . . . without human assistance." *Id.* at *2. The plaintiff's central allegation was that "due to her blindness and fractures, at all times from the inception of the claim to the present, [the plaintiff]

7

has been unable to perform two or more activities of daily living as defined in the Policy." *Id.* at *3. The court dismissed the plaintiff's complaint for failure to state a claim, holding that the complaint's "primary allegation is properly characterized as a conclusion on the ultimate issue of this case—*i.e.*, whether [the plaintiff's] injuries render it impossible 'to perform two or more activities of daily living as defined in the Policy.'" *Id.* That is, the court found that plaintiff "ha[d] not shown her inability to perform two or more [Activities of Daily Living] but only conclusively asserted that she cannot do so." *Id.* The court described her allegation as "formulaic" given it "merely restate[d] the language of the Policy without asserting any facts showing that [the plaintiff's] claim for relief [was] plausible." *Id.*

Here Rollin alleges even fewer facts regarding her eligibility for benefits than the plaintiff did in *Brown*. Rollin's central allegations that she "became eligible" and that she submitted "all necessary documentation" showing her eligibility, are conclusory statements on the ultimate issue of the case—that is, whether Rollin became eligible for benefits such that Transamerica's denial of benefits constituted a breach of the parties' agreement. *See id.*; *see also Potovsky II*, 2023 WL 8461171, at *5. Given their conclusory nature, these allegations need not be considered true. *See id.*; *see also Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678.

Even if this Court were to find that, liberally construed, Rollin's allegation that she submitted "all relevant documents" were sufficient to allege that she submitted to Transamerica a prescribed and signed Plan of Care and a certification by a licensed medical professional that she was either Cognitively Impaired or unable to perform two of the six Activities of Daily Living, as defined in and required by the policy, Rollin's allegations would still fail to state a claim. The policy provides that it "will not pay benefits when an Insured Person is eligible for confinement, treatment, services or care . . . that are not included in an Insured Person's Plan of Care, unless a benefit specifically states that a Plan of Care is not required." Doc. 25-1 at 15. Rollin does not allege what benefits were included in any potentially submitted Plan of Care nor what benefits she requested, so it is impossible to determine from her allegations if she requested and was denied benefits that were in her Plan of Care. That is, if she submitted a Plan of Care, and if she requested benefits that were not included in her Plan of Care, Transamerica's denial of those

benefits would not appear to be a breach of the agreement. This described potential factual scenario as well as its converse (that is, that she submitted a Plan of Care and that she requested benefits included within it) are both equally consistent with the minimal allegations in the first amended complaint. Therefore, for this independent reason, the first amended complaint fails to plausibly state a claim for breach of contract. *See Iqbal*, 556 U.S. at 678 (holding that "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (cleaned up)).

Similarly, Rollin does not allege that she requested benefits under the Alternative Payment Benefit provision, again failing to move her claim over the line from "possibility" to "plausibility." *See id.* The policy provides that it "will not pay benefits when an Insured Person is eligible for confinement, treatment, services or care . . . rendered by a member of an Insured Person's Immediate Family," unless the benefit that the insured seeks is the Alternative Payment Benefit. Doc. 25-1 at 15. As Rollins does not allege that she sought benefits under the Alternative Payment Benefit, it remains unclear from the face of the first amended complaint whether an alleged denial of benefits based on a family member's ability to care for her breached the policy.

Rollin's breach of contract claim also fails because Rollin has failed to adequately plead damages. Rollin requests over $500,000 in damages under the policy. FAC, Request for Relief 1. But she provides no indication of how she arrived at this figure. *See generally* FAC. The first amended complaint must plausibly "articulate what expenses or other damages [Rollin] incurred as a result of [Transamerica]'s purported breach." *See Potovsky v. Lincoln Benefit Life* (*Potovsky I*), Case No. 23-cv-02235-WHO, 2023 WL 5663087, at *4 (N.D. Cal. Aug. 31, 2023); *see also Potovsky II*, 2023 WL 8461171, at *8 (finding plaintiffs had not adequately pleaded damages because the policy was a reimbursement policy, and plaintiffs did not allege they submitted a claim for reimbursement). Rollin argues her general allegation that she submitted "all necessary documentation" necessarily includes submitting requests for reimbursement, but that argument fails for the reasons already discussed. Additionally, even if submitting "all necessary documentation" was interpreted to include requests for reimbursement, Rollin does not allege

what costs she submitted for reimbursement and therefore still fails explain what damages she actually incurred.

Because Rollin has failed to plausibly allege that she was due benefits under the policy that were wrongfully withheld by Transamerica, she also fails to plausibly allege her claims of breach of the implied covenant of good faith and fair dealing and financial elder abuse.[7] *See, e.g.*, *Brehm v. 21st Century Ins. Co.*, 83 Cal. Rptr. 3d 410, 417 (Cal. App. Ct. 2008) ("[T]here can be no breach of the implied covenant of good faith and fair dealing if no benefits are due under the policy."); *Crawford v. Continental Cas. Ins. Co.*, Case No. SACV 14-00968-CJC (JCGx), 2014 WL 10988334, at *2 (C.D. Cal. July 24, 2014) (noting elder abuse claim is contingent on bad faith claim); *see also, e.g.*, *Potovsky II*, 2023 WL 8461171, at *10–11 (N.D. Cal. Dec. 6, 2023) (finding that where plaintiff failed to adequately allege breach, plaintiff's claims for good faith and fair dealing and elder abuse also must fail). Moreover, Rollin's bad faith and financial elder abuse claims fail independently of her failure to allege a breach of contract, given that she does not provide factual support for either and makes only conclusory allegations. *See Potovsky I*, 2023 WL 5663087, at *5–6 (finding nearly identical allegations conclusory and insufficient to state a claim for either bad faith or elder abuse).

If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). The "underlying purpose of Rule 15 [is] to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (cleaned up). However, a court has discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue

---

[7] Rollin's opposition includes additional factual allegations that are not in her first amended complaint regarding these claims, including that "[Rollin]'s family lived next door" and that Transamerica "ignored relevant evidence" and "withheld approval of proposed caregivers and schedule." Doc. 27 at 11–12. Because these allegations are not included in her first amended complaint, the Court does not consider them in resolving the motion to dismiss. *See, e.g.*, *Orellana v. Mayorkas*, 6 F.4th 1034, 1042–43 (9th Cir. 2021) ("[T]he district court generally may not consider material outside the pleadings at the motion to dismiss stage.") (citation omitted).

1  prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of
2  amendment." *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008).

3       Transamerica argues that leave to amend should not be granted because Rollin was on
4  notice of the deficiencies of her first amended complaint by virtue of Transamerica's previous
5  motion to dismiss her original complaint.  Doc. 32 at 4, 7.  Transamerica cites no case for the
6  proposition that, where a first amended complaint filed in response to a motion to dismiss is
7  deficient, it constitutes a "repeated failure to cure deficiencies by amendment previously
8  allowed," *Leadsinger*, 512 F.3d at 532, such that dismissal without further leave to amend is
9  warranted.  Rather, such a circumstance typically occurs when the Court has previously identified
10 deficiencies and allowed an amendment.  In the only case Transamerica cites to support its
11 position that leave to amend should not be granted, the court dismissed a *second* amended
12 complaint without further leave to amend only after previously issuing an order dismissing the
13 substantially similar first amended complaint with leave to amend.  *See* Doc. 32 at 4 (citing *Davis*
14 *v. Sentinel Ins. Co.*, Case No.: 17-CV-1845 W (JLB), 2018 WL 5084789, at *4 (S.D. Cal. Oct.
15 18, 2018)).  This is the first time that the Court has reviewed a complaint in this action and
16 identified Rollin's allegations as deficient, and here leave to amend is warranted.

17 **V.      Conclusion and Order**

18      Based upon the foregoing, defendant's motion to dismiss, Doc. 24, is GRANTED, and the
19 first amended complaint, Doc. 21, is DISMISSED with leave to amend.  Within fourteen (14)
20 days from the date of this Order, Rollin shall file either a second amended complaint or a notice
21 of her intent not to do so.  If a second amended complaint is filed by Rollin, Transamerica shall
22 file a responsive pleading thereto within fourteen (14) days of its filing.

24 IT IS SO ORDERED.

25    Dated:   July 2, 2025

                                                    UNITED STATES DISTRICT JUDGE