UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROL A. ROLLIN, | No. 1:25-cv-00194-KES-HBK |
| Plaintiff, | ORDER GRANTING DEFENDANT'S PARTIAL MOTION TO DISMISS AND MOTION TO STRIKE THIRD AMENDED COMPLAINT |
| v. | |
| TRANSAMERICA LIFE INSURANCE COMPANY, | Doc. 53 |
| Defendant. | |

Plaintiff Carol A. Rollin filed a third amended complaint ("TAC") against defendant Transamerica Life Insurance Company ("Transamerica") alleging claims for breach of contract; breach of implied covenant of good faith and fair dealing; and financial elder abuse in violation of the Elder Abuse and Dependent Adult Civil Protection Act, California Welfare Institutions Code. Doc. 48.

Pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(6), and 12(f), Transamerica requests the Court: (1) dismiss the claims for breach of the implied covenant and financial elder abuse for failure to state a claim and failure to plead fraud with particularity; (2) strike the demand for punitive damages and an exhibit attached to the TAC. Doc. 53. For the reasons set forth below, the motion is granted. Plaintiff's claims for breach of the implied covenant and financial elder abuse are dismissed without leave to amend.

///

1

## I.      BACKGROUND

This action concerns a dispute over Plaintiff's attempts to collect benefits under a long-term care policy provided by Transamerica ("the Policy"). *See generally* Doc. 48. On July 3, 2025, the Court granted Transamerica's motion to dismiss the first amended complaint ("FAC"), with leave to amend.[1] Doc. 34. On July 15, 2025, Plaintiff filed the second amended complaint ("SAC"). Doc. 35. Transamerica also moved to dismiss the SAC, and the Court granted the motion in part, with leave to amend.[2] Doc. 41. As Transamerica did not challenge the breach of contract claim[3], the Court denied the motion with respect to Plaintiff's request for policy benefit damages on her breach of contract claim. The Court granted Transamerica's motion on all other grounds. *See id.* at 13.

Analyzing the breach of the implied covenant of good faith and fair dealing claim, the Court identified several persisting deficiencies. Doc. 41 at 7–9. First, the Court noted that Plaintiff's specific allegations pertaining to good faith and fair dealing were unchanged from the FAC that were found to be conclusory. *Id.* at 7. Second, the new breach of contract allegations, which were incorporated by reference in Plaintiff's bad faith claims, remained deficient because they did not specify what care was needed, as required under the policy. *Id.* at 7–8. Although Plaintiff alleged in the SAC that she sought benefits under the Alternative Payment Benefit provision and submitted documents that she contended constituted a Plan of Care, Plaintiff still

[1] The Court identified several deficiencies with the breach of contract claim. *See* Doc. 34 at 7–10; *see also* Doc. 41 at 2.

[2] Because many of the allegations in the TAC remain unaltered from the SAC and FAC, those allegations will not be re-summarized in full here. *Compare* Doc. 21, *with* Doc. 35. *and* Doc. 48. The Court incorporates by reference the factual background sections contained in its July 3, 2025, and October 16, 2025 Orders. Doc. 34 at 2–5; Doc. 41 at 3–4. As was the case previously, the long-term care policy is appropriately "considered in connection with Transamerica's motion to dismiss because it is incorporated by reference into the [third] amended complaint." *Id.* at 2 n.2 (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Engers v. Allstate Ins. Co.*, 682 F. Supp. 2d 1094, 1097 (E.D. Cal. 2009)); *see also* Doc. 41 at 2 n.2.

[3] Unlike in the motion to dismiss the FAC, Transamerica did not move to dismiss plaintiff's breach of contract claim and intends to "separately address Plaintiff's breach of contract claim in a motion for summary judgment based on undisputed evidence surrounding the claim decision." Doc. 37 at 14 n.5.

failed to allege what treatment, services, or care were included in those documents or what benefits were requested.  *Id.* at 8.  As a result, the Court found it "impossible to determine whether the denial of Rollin's claim and appeal was a denial of benefits due under the policy" and thus held the new allegations in the SAC did not "move her claim over the line from 'possibility' to 'plausibility.'"  *Id.* at 8–9 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Considering these deficiencies, the Court determined that Rollin also failed to plausibly allege her financial elder abuse claim.  The Court noted the unaltered "financial elder abuse claim asserted in the FAC was dismissed independently of Rollin's failure to allege a breach of contract because she did not provide factual support for it and made only conclusory allegations."  *Id.* at 9.  Consequently, Plaintiff failed to state a claim supporting general damages for mental and emotional distress.

Last, the Court dismissed with prejudice Rollin's request for punitive damages for "fail[ure] to sufficiently allege that Transamerica acted with 'oppression, fraud, or malice' as required under California law."  *Id.* at 11 (quoting Cal. Civ. Code § 3294).

The SAC was dismissed with leave to amend, providing Plaintiff an opportunity to cure the deficiencies identified.  Doc. 41 at 12.  Plaintiff filed the TAC on October 29, 2025.  Doc. 48.

## II.    ALLEGATIONS.[4]

In 2003, Transamerica's predecessor issued a long-term care policy to Plaintiff.  Doc. 48 at ¶ 6.  She thereafter paid all premiums due under the policy.  *Id.* at ¶ 7.  On June 10, 2024, Christopher M. Bauer, Ph.D. ("Dr. Bauer") "performed an in-person neuropsychological evaluation of Plaintiff and administered a series of tests to assess Mrs. Rollin's cognitive impairment".  *Id.* at ¶ 8.  Dr. Bauer produced a report of neuropsychological evaluation based on his findings ("the report"), which plaintiff attached to the TAC as exhibit "A".  *Id.*  "The tests administered by Dr. Bauer are generally accepted medical diagnostic methods that reliably measure impairment in the areas required by the Policy.  Based on the results, Dr. Bauer certified Mrs. Rollin as requiring continual supervision due to cognitive impairment."  *Id. at* ¶ 9.

---

[4] The Court presumes the factual allegations in the TAC to be true in evaluating the motion to dismiss.  *See Murguia v. Langdon*, 61 F.4th 1096, 1106 (9th Cir. 2023).

Specifically, Dr. Bauer opined that, "[f]amily should continue to closely supervise medications to make sure Mrs. Rollin is taking them reliably and correctly.  Family should continue to keep track of her appointments and accompany her to her healthcare appointments."  *Id.* at ¶ 20; *see also* Doc. 48-1 at 4.  He further opined that, "Mrs. Rollin can likely continue to live alone for the time being given her level of family support."  Doc. 48 at ¶ 20; *see also* Doc. 48-1 at 4.  The family referred to are Plaintiff's son and daughter-in-law, who live next door to Plaintiff and have assisted Rolling with her finances, monitored her medications, and tracked her appointments for more than one year. *Id.* at 2.  They also "do her shopping and bring her dinner each evening."  *Id.* Plaintiff claims that because this certification occurred within 12 months of her claim and appeal to Transamerica, "[she] was eligible to receive benefits under the terms of the Policy."  Doc. 48 at ¶ 9.

Upon certification, Plaintiff "initiated and submitted all documentation required by the terms of the Policy," but Transamerica denied her claim via a letter dated July 22, 2024, for failing to submit a Plan of Care.  *Id.* at ¶¶ 10, 11.  The policy's Benefit Eligibility provision states that "[t]o be eligible for benefits provided under this Policy, [Transamerica] must receive a Plan of Care that specifies what care is needed, unless a benefit specifically states that a Plan of Care is not required."  Doc. 25-1 at 23.  The policy defines a Plan of Care as "[a] written, face-to-face, systematic, standardized, and comprehensive assessment of one's functional and cognitive capacity, limitation and needs, strengths, and abilities, specifying the duration, frequency, type and scope of services necessary for care."  *Id.* at 21.  The policy excludes compensation for care "rendered by a member of an Insured Person's Immediate Family," but states that exclusion does not apply to the Alternative Payment Benefit provision.  *Id.* at 15.  The policy defines Immediate Family as "anyone who is related to an Insured Person or his or her Spouse . . . as a parent, grandparent, child, grandchild, . . . ."  *Id.* at 16.

In September 2024, Plaintiff submitted an appeal to Transamerica with more supporting documentation, including "[t]wo neuropsychological reports prepared by Dr. Bauer, as well as a Medical Cognitive Questionnaire Form," which Rollin asserts constitute a plan of care as defined by the policy.  Doc. 48. at ¶ 13.  Her appeal letter "expressly requested the Alternative Payment

4

Benefit, . . . , and explained that the [ ] Provision allows family members to serve as reimbursable caregivers for one-third of the daily maximum benefit." *Id.* at ¶ 15. Plaintiff alternatively "requested payment of Home Health Care, Personal Care, and Homemaker Services Benefits." *Id.* Plaintiff attached her appeal submission to the TAC as exhibit "B".[5] *Id.*

On February 5, 2025, Transamerica denied the appeal. *Id.* at ¶ 22. Transamerica "acknowledged that Dr. Bauer was a Licensed Health Care Practitioner, but interpreted his reports . . . [so as to] claim[] that he was unable to certify Plaintiff as a Chronically Ill Individual." *Id.* According to Plaintiff, Transamerica "incorrectly and inappropriately interpreted 'continual' supervision as needing supervision 24 hours a day, 7 days of week, rather than the industry standard interpretation, i.e. frequently recurring." *Id.* Plaintiff claims that Transamerica "predicat[ed] its denial on the fact that [] Rollin has family members who are able to provide the care which would otherwise be covered and paid for under the terms of her Policy." *Id.* at ¶ 24. Plaintiff contends that if Transamerica "reached the proper determination that [she] was certified to meet the requirements found in the Benefit Eligibility provision for Cognitive Impairment," she "would be entitled to benefits under the Alternative Payment Benefit provision for which the exclusion regarding a member of an Insured Person's Immediate Family does not apply." *Id.* Eligibility for the alternative payment benefit is conditional upon Transamerica receiving a plan of care. Doc. 25-1 at 35. The policy further states that to qualify for Home Health Care, Personal Care, and Homemaker Services Benefits, the insured must satisfy the policy's Benefit Eligibility provision, including providing Transamerica with a plan of care. *Id.* at 23, 27–28.

Plaintiff also attached to the TAC, as exhibit "C", a declaration from her daughter-in-law, Christina Rollin, who asserts that Plaintiff's "cognitive impairment has continued to decline since Transamerica denied benefits." Doc. 48 at ¶ 25; *see also* Doc. 48-3 at ¶ 37.

Plaintiff asserts that she has been improperly denied benefits under the policy, requiring

---

[5] Defendant disputes plaintiff's assertion that exhibit B is a "true and correct copy" of the appeal letter, arguing that it is "unsigned, unauthenticated, and slightly different from the actual appeal letter Transamerica received." Doc. 53 at 13–14 n.3. Transamerica also contends that exhibit B does not contain the referenced attachments cited in the letter. *Id.* The Court takes judicial notice of exhibit B for purposes of evaluating the present motion. *See supra* n.4.

her to incur "significant, continuing out-of-pocket expenses for home care that should have been covered under the policy, which continue to date." Doc. 48 at ¶ 26.

Plaintiff does not add any new allegations to the TAC for her claims for breach of the implied covenant of good faith and fair dealing, or for statutory elder abuse. The only differences between the SAC and TAC with respect to these claims are the deletion of certain allegations pertaining to her demand for punitive damages. Plaintiff also removed her request for punitive and exemplary damages.[6] *Compare* Doc. 35 at 4–7, *with* Doc. 48 at 7–9.

On November 19, 2025, Transamerica filed a partial motion to dismiss and motion to strike the TAC.[7] Doc. 53. Specifically, Transamerica moves to dismiss "claims for breach of the duty of good faith and fair dealing and for financial elder abuse" and moves to strike plaintiff's "demand for punitive damages which was previously dismissed with prejudice, and the Declaration of Christina Rollin [. . .], which is a witness affidavit inappropriately appended to the pleading." *Id.* at 2.[8] Plaintiff filed an opposition to the motion on December 10, 2025; and Transamerica filed a reply on December 22, 2025. Docs. 56, 57. The motion was taken under submission pursuant to Local Rule 230(g) on December 22, 2025. Doc. 58.

## III.    LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to

---

[6] The TAC requests "a trebling of any punitive damages award pursuant to California Civil Code §3345, but plaintiff concedes in her opposition to defendant's motion to strike that "the punitive-damages references may be stricken as surplusage . . . ." Doc. 48 at 9; Doc. 56 at 24–25.

[7] Transamerica's motion to dismiss is brought under Rule 12(b)(6), with an added basis for dismissal of the financial elder abuse claim under Rule 9(b). Doc. 53 at 28. As this Order resolves the motion under Rule 12(b)(6), the Court need not address Transamerica's contention that Rule 9(b) applies and that plaintiff failed to meet its requirements. *See also* Doc. 34 at 2 n.1.

[8] Consistent with their motion to dismiss the SAC, Transamerica did not move to dismiss the breach of contract claim in the TAC; it notes its intent to address that claim on summary judgment. Doc. 53 at 13 n.2; *see also*, *supra* n.3.

6

relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  The complaint must contain facts that "nudge [the plaintiff's] claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  The court need not assume the truth of legal conclusions cast in the form of factual allegations.  *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Moreover, it is inappropriate to assume that a plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## IV.    ANALYSIS

### A.    <u>Good Faith and Fair Dealing</u>

"The law implies in every contract, including insurance policies, a covenant of good faith and fair dealing.  'The implied promise requires each contracting party to refrain from doing anything to injure the right of the other to receive the agreement's benefits.'"  *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 720 (2007) (quoting *Frommoethelydo v. Fire Ins. Exch.*, 42 Cal. 3d 208, 214 (1986)).  "The scope of the duty of good faith and fair dealing depends upon the purposes of the particular contract . . . .  In the context of an insurance policy, the terms and conditions of the policy define the duties and performance to which the insured is entitled."  *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 400 (2000) (internal quotation

marks, brackets, and citation omitted).  Generally, "there can be no breach of the implied covenant of good faith and fair dealing if no benefits are due under the policy." *Brehm v. 21st Century Ins. Co.*, 166 Cal. App. 4th 1225, 1235 (2008) (citing *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995)). To state a claim for breach of good faith and fair dealing in the insurance context, a plaintiff must plausibly allege that "(1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause." *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001) (citing *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990)).

Plaintiff asserts that "[a]t the pleading stage, a plaintiff need only allege facts supporting a plausible inference that the insurer acted unreasonably," but the cases on which she relies do not support finding the TAC's conclusory allegations of unreasonableness sufficient to survive a motion to dismiss.[9]  Doc. 56 at 12–13.  In *Maslo v. Ameriprise Auto & Home Ins.*, 227 Cal. App. 4th 626, 633 (2014), the court recites that "[a]n insurer that unreasonably delays, or fails to pay, *benefits due under the policy* may be held liable in tort for breach of the implied covenant." (internal citations omitted) (emphasis added).  The court in *Wilson* found at summary judgment that there was a triable issue of fact as to whether the defendant unreasonably and in bad faith denied the plaintiff's claim, not that conclusory allegations of unreasonableness are sufficient to survive a motion to dismiss.  In *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 818–19 (1979) (en banc), the court upheld the lower court's jury instruction that the defendant breached the implied covenant of good faith and fair dealing when it failed to properly investigate the plaintiff's claim, but that finding does not negate that the insured needs to be eligible to recover under their policy.  *See id.* ("[f]or the insurer to fulfill its obligation not to impair the right of the insured to receive the benefits of the agreement, it again must give at least as much consideration to the latter's interests as it does its own.")

The TAC alleges that Transamerica breached the implied covenant of good faith and fair dealing by:

---

[9] Plaintiff cites to *Alvarez v. State Farm Mut. Auto. Ins. Co.*, 601 F. App'x 625, 626 (9th Cir. 2015) for this general statement of law, but the Court was unable to locate any such case.

(a) Unreasonably withholding coverage from plaintiff in bad faith at a time when defendant knew plaintiff was entitled to said coverage under the policy;

(b) Unreasonably and in bad faith failing to provide a prompt and reasonable explanation of the basis relied on under the terms of the policy, in relation to the applicable facts and policy provisions, for the failure to pay valid claims under the terms of plaintiff's coverage.

(c) Intentionally and unreasonably applying pertinent policy provisions to limit defendant's financial exposure and contractual obligations and to maximize profits; [and]

(d) Unreasonably compelling plaintiff to institute litigation to recover her coverage due under the policy to further discourage plaintiff from pursuing her full policy benefits.

Doc. 48 at ¶ 28. These are the same allegations from the FAC and SAC that were found to be conclusory. As explained in the Court's Order regarding the defendant's partial motion to dismiss the SAC, the allegations are insufficient to state a claim because they are predicated on the assumption that Plaintiff showed she was entitled to receive benefits. Doc. 41 at 8. Additionally, the TAC's new breach of contract allegations, which are incorporated by reference in Plaintiff's bad faith claim, still fail to demonstrate that she was due benefits.

To be eligible to recover under the policy, including under the general terms regarding benefit eligibility and under the terms governing the Alternative Payment Benefit, Plaintiff must "ha[ve] been certified within the last 12 months by a Licensed Health Care Practitioner" as "(1) requiring continual supervision . . . by another person to protect [her] from threats to [her] health or safety, due to Cognitive Impairment; or (2) requiring the presence of another person within arm's reach due to the inability to perform at least 2 of the 6 Activities of Daily Living . . . ." Doc. 25-1 at 23; *see also id.* at 35. Plaintiff must also have provided Transamerica with a Plan of Care that specifies what care is needed. *Id.* at 23. The Plan of Care must be written; be based on the insured's comprehensive assessment; be required because the person is either Cognitively Impaired or unable to perform two of the six Activities of Daily Living, as those terms are defined by the policy; and have been "prescribed, approved, and signed by a Licensed Health Care Practitioner . . . ." *Id.* at 21. The policy also provides that it "will not pay benefits when an Insured Person is eligible for confinement, treatment, services or care . . . (6) that are not included

9

in an Insured Person's Plan of Care, unless a benefit specifically states that a Plan of Care is not required . . . ." *Id.* at 15.

The FAC was deficient, in part, because Plaintiff did not allege what treatment, services, or care were included in any submitted Plan of Care nor what benefits she requested. Those omissions made it impossible to determine whether she was denied benefits that were included in her Plan of Care and rendered her allegations merely consistent with Transamerica's liability. *See* Doc. 34 at 8–9. The SAC remained deficient, in part, because although plaintiff had then alleged that she sought benefits under the Alternative Payment Benefit provision and submitted documents she contended constituted a Plan of Care, the SAC still failed to allege what treatment, services, or care were included in those documents or what benefits were requested. *See* Doc. 41 at 8. While the TAC adds information to supplement the allegations that the report qualifies as a Plan of Care that would properly certify her as cognitively impaired, it is still ultimately deficient.

Plaintiff has now provided the report, which she claims constitutes a Plan of Care, however, it prescribes only close family supervision. Doc. 48 at ¶ 20. The policy explicitly "will not pay benefits . . . (8) rendered by a member of an Insured Person's Immediate Family, unless" a listed exception applies. Doc. 25-1 at 15. Plaintiff does not claim that any exception other than the Alternative Payment Benefit applies. Thus, she does not sufficiently allege her eligibility for Home Health Care, Personal Care, or Homemaker Services Benefits under the policy.

Plaintiff has still not identified the other supporting documents she submitted with the appeal and that she claims constitute a Plan of Care, or allege what treatment, services, or care were included in those documents or what benefits were requested. Thus, it remains impossible to determine whether the denial of plaintiff's claim and appeal was a denial of benefits due under the policy in relation to those documents. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal quotation marks, brackets, and citation omitted). While Plaintiff's claim for the Alternative Payment Benefit does not suffer from the same deficiency because it is exempt from the Immediate Family exclusion, plaintiff's claim remains deficient for failing to specify "the duration, frequency, type and scope of services

10

necessary for care." Doc. 25-1 at 21. Dr. Bauer's recommendation that Plaintiff's "[f]amily should continue to closely supervise medications . . . [and] should continue to keep track of her appointments and accompany her to her healthcare appointments" may satisfy the type and scope of services requirement, but it does not address their duration or frequency. Doc. 48 at ¶ 20; *see also* Doc. 48-1 at 4. Given these omissions, plaintiff's contention that she submitted to Transamerica a Plan of Care as defined by the policy is undermined and plaintiff is ineligible for benefits provided under the policy. As a result, Plaintiff fails to move her claim over the line from "possibility" to "plausibility." *Iqbal*, 556 U.S. at 678. For this reason, the TAC fails to state a claim for breach of the implied covenant of good faith and fair dealing.

The parties also raise arguments regarding whether Transamerica conducted an inadequate investigation or otherwise lacked a reasonable basis to withhold plaintiff's benefits, including arguments as to the applicability of California's genuine dispute rule, but addressing those arguments is unnecessary. Even if they were resolved in Plaintiff's favor, she would still fail to state a claim for breach of the implied covenant of good faith and fair dealing for the reasons identified above.

### B. **Financial Elder Abuse**

Because Plaintiff has once again failed to plausibly allege that she was due benefits under the policy that were wrongfully withheld by Transamerica, she also fails to plausibly allege her financial elder abuse claim. *Crawford v. Continental Cas. Ins. Co.*, Case No. SACV 14-00968-CJC (JCGx), 2014 WL 10988334, at *2 (C.D. Cal. July 24, 2014) (noting elder abuse claim is contingent on bad faith claim); *Potovsky v. Lincoln Benefit Life*, No. 23-CV-02235-WHO, 2023 WL 8461171, at *11 (N.D. Cal. Dec. 6, 2023) ("[t]he viability of financial elder abuse claims that involve denial of benefits often turns on whether a plaintiff has sufficiently alleged that the defendant acted in bad faith."), *aff'd sub nom. Potovsky v. Lincoln Benefit Life Co.*, No. 23-4130, 2024 WL 5289187 (9th Cir. Jan. 7, 2025). Notably, the financial elder abuse claim asserted in the FAC was dismissed independently of Plaintiff's failure to allege a breach of contract because she did not provide factual support and made only conclusory allegations. Doc. 34 at 10. As discussed above, the allegations supporting that claim in the TAC are unaltered, and the TAC's

11

new breach of contract allegations incorporated by reference in the financial elder abuse claim are insufficient to plausibly support entitlement to relief.

### C. **Damages**

In the Order dismissing the FAC, the Court explained that Plaintiff failed to adequately support her request for breach of contract damages, by failing to identify what damages she actually incurred. *Id.* at 9–10.  Plaintiff provided no indication of how she arrived at the amount of $500,000.00 in damages.  *Id.*  In the SAC, Plaintiff alleged that she incurred "significant, continuing out-of-pocket expenses for home care that should have been covered under the Policy, which continue to date." Doc. 48 at ¶ 26.  In the Order addressing the SAC, the Court held Plaintiff's allegation for policy benefit damages was sufficiently plausible as Transamerica did not challenge the breach of contract claim.  Doc. 41 at 10.

To the extent relevant to Transamerica's motion to dismiss and strike, the TAC requests the following damages:

> General damages for mental and emotional distress and other incidental damages in the sum of $1,500,000.00;
>
> A trebling of any punitive damages award pursuant to California Civil Code §3345.

Doc. 48 at 9.  Each are considered below.

### 1. **General Damages**

Plaintiff seeks to recover $1.5 million in general damages for mental and emotional distress.   Generally, emotional distress damages are not recoverable in an action for breach of contract.  *Erlich v. Menezes*, 21 Cal. 4th 543, 558 (1999).  Such damages may be available, however, if the plaintiff adequately pleads a tortious breach of the implied covenant of good faith and fair dealing or a financial elder abuse claim.  *See Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 684 (1988) (bad faith); *Cameron v. Las Orchidias Props., LLC*, 82 Cal. App. 5th 481, 519 (2022) (financial elder abuse).  As Plaintiff fails to state plausible claims for bad faith and financial elder abuse, her derivative claim for emotional distress damages likewise fails.

### 2. **Punitive Damages**

The Court dismissed plaintiff's request for punitive damages, with prejudice, stating that

12

the "allegations fail to sufficiently allege that Transamerica acted with 'oppression, fraud, or malice' as required under California law." Doc. 41 at 11 (internal citation omitted). Plaintiff does not oppose defendant's motion to strike the punitive damages demand. The Court reaffirms its prior holding that this claim is dismissed with prejudice.

### D. **Motion to Strike**

Plaintiff attached a declaration from her daughter-in-law, Christina Rollin an exhibit to the TAC ("the Rollin Declaration"). Doc. 48-3. The declaration includes new information detailing Plaintiff's condition and care, and declarant's interactions with Dr. Bauer and Transamerica. Plaintiff references the Rollin Declaration in the TAC to support that "Plaintiff's cognitive impairment has continued to decline since Transamerica denied benefits . . . [and] Plaintiff has had to incur significant out-of-pocket expenses to hire caregivers for daytime and overnight care." Doc. 48 at ¶ 25. Defendant moves to strike the Rollin Declaration under Rule 12(f).

Rule 12(f) grants the court authority to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Under Rule 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." When ruling on a Rule 12(b)(6) motion to dismiss, courts may consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice . . . ." *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Courts have granted motions to strike exhibits attached to complaints when those exhibits do not qualify as "written instruments" under Rule 10(c). *See e.g., DeMarco v. DepoTech Corp.*, 149 F. Supp. 2d 1212, 1222 (S.D. Cal. January 26, 2001) (striking an exhibit attached to the complaint for not resembling a Rule 10(c) written instrument); *Galvan v. Yates*, 2006 WL 1495261, at *4 (E.D. Cal. May 24, 2006) (striking witness declarations that are not written instruments because they "are in the nature of evidence submitted to bolster Plaintiffs' allegation set for in the [complaint].") However, "if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908 (striking a declaration that was not referenced extensively or "integral to [the plaintiff's] claim, . . ." *Id.* (internal citation omitted).

The parties each cite to *DeMarco* for the definition of a "written instrument" under Rule 10(c). *DeMarco* defined a "written instrument" as "a document evidencing legal rights or duties or giving formal expression to a legal act or agreement, such as a deed, will, bond, lease, insurance policy or security agreement." 149 F.Supp.2d at 1220 (internal citation omitted). The court explained that "[t]he documents that satisfy this definition 'consist largely of documentary evidence, specifically, contracts, notes, and other writings on which a party's action or defense is based[.]'" *Id.* (internal citation omitted). The court struck an expert's affidavit that "does not resemble any of the classes of documents that meet the definition of a 'written instrument' under Rule 10(c)." *Id.* The Rollin Declaration does not resemble any of the documents mentioned in *DeMarco* and provides no documentary evidence.

Additionally, "witness affidavits and other exhibits containing largely evidentiary material typically do not qualify as 'written instruments' under Rule 10(c)." *Thaut v. Hsieh*, 2016 WL 3058235, at *10 (E.D. Cal. May 31, 2016), *adopted* at 2016 WL 10672012, at *1 (E.D. Cal. Aug. 11, 2016); *see also Galvan*, 2006 WL 1495261, at *4 (E.D. Cal. May 24, 2006) (finding a witness declaration is not a "written instrument" when it is "in the nature of evidence submitted to bolster Plaintiff's allegations . . . .") Plaintiff attempts to distinguish *Thaut* by claiming the declaration is not offered solely as evidence, but rather "offered to clarify factual allegations" and provide "narrative-support". Doc. 56 at 23. However, Plaintiff only cites the declaration once to clarify allegations concerning her expenses and as support that her cognitive impairment has continued to decline. *See* Doc. 48 at 25. The majority of the Rollin Declaration, which includes fifty-two paragraphs, contains other material intended as evidence. Plaintiff also attempts to distinguish *Galvan* by drawing a distinction between "evidence meant to establish liability" and "factual detail about . . . matters central to damages and causation," but provides no reasoning for why that distinction matters or how the factual details provided are not submitted to bolster her allegations. Doc. 56 at 23. As a result, the Rollin Declaration is not a "written instrument" under Rule 10(c).

The Rollin Declaration is also not incorporated by reference to the complaint because it is neither extensively referenced in the complaint nor does it form the basis of the claims. The Rollin Declaration is only referenced once and provides no information to clarify why plaintiff is

entitled to recover under the policy.  Doc. 48 at 25; *see generally* Doc. 48-3.

For the reasons stated above, the motion to strike the Rollin Declaration is granted.

### E.  Leave to Amend

Plaintiff requests leave to amend to incorporate the factual allegations included in the Rollin Declaration if the Court grants Transamerica's motion to strike.  Doc. 56 at 24.

If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). The "underlying purpose of Rule 15 [is] to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (cleaned up).  A court has discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008).  The incorporation of allegations in the Rollin Declaration would not cure the pleading deficiencies identified or establish such that Plaintiff would be eligible to recover under the policy.  Further leave to amend would be futile and is therefore denied.

///

///

///

///

///

///

///

///

///

///

///

///

## V.     CONCLUSION

For the reasons explained above:

1.     Transamerica's partial motion to dismiss, Doc. 53, is granted.

2.     The claims for breach of the implied covenant of good faith and fair dealing and for financial elder abuse, as well as the request for damages for mental and emotional distress, in the TAC, Doc. 48, are dismissed without leave to amend;

3.     The request for punitive damages is stricken;

4.     The Rollin Declaration attached to the TAC, Doc. 48-3, is stricken; and

5.     This action will proceed on the remaining breach of contract claim in the TAC.

IT IS SO ORDERED.

Dated:     June 28, 2026

_____
UNITED STATES DISTRICT JUDGE

16